DOWNEY, Judge.
Appellant, Dolan, Fertig & Curtis, P. A., a law firm, seeks review of a summary judgment in favor of appellee, Gulf Insurance Company, arising out of a suit for declaratory relief to determine appellee’s liability based upon a legal malpractice insurance policy.
It appears that the appellant law firm contracted with Gulf Insurance Company for errors and omissions coverage for the period of November 20, 1978, to November 20, 1979. Under said policy, Gulf agreed to pay all sums on behalf of the insured that the insured should become legally obligated to pay as damages for any claim arising out of professional legal services first made against the insured during the policy period. The policy required that the claim arise for *1109 services performed during the policy period; that the claim be known to or made against the insured during said period; and that the insured notify the insurer thereof during said period.[1] At the end of the term, the law firm did not renew the Gulf policy, but instead contracted with Lawyers Professional Liability Insurance Company (L.P. L.I.C.) for the period from November 30, 1979, to November 30, 1980, with a retroactive provision extending back to 1976, except for claims arising out of any occurrence prior to the effective date of the policy, if the insured knew of them prior to the policy period.
It further appears that on November 19, 1979, the day before the Gulf policy term expired, the law firm was notified by a dissatisfied client that a malpractice suit was imminent.[2] In December, the law firm notified L.P.L.I.C. of the claim, which the company rejected in January because, as its application shows, the claim was known to the law firm when the L.P.L.I.C. policy was issued. Having been rebuffed by its current carrier, the law firm notified Gulf of the claim on February 12, 1980. Gulf denied coverage because it was not notified during the policy period as expressly required in the contract.
In the interim, the aggrieved client sued the law firm and received a judgment for $55,000. Appellant commenced this suit for declaratory relief, seeking a judicial determination as to which of the companies was liable for the damages award. In due course, the trial court granted Gulfs motion for summary judgment because the Gulf policy required the claim to be known or made and reported to the company during the policy period. This provision requiring notice to the company had not been fulfilled. It is that summary judgment that we have for consideration.[3]
Appellant seeks reversal on the grounds that the Gulf policy was either against public policy or was ambiguous, and should thus be construed in favor of coverage. Appellant also contends it should recover because Gulf was not prejudiced by the late notice. *1110 However, we find no ambiguity in the policy, nor are we impressed with a wholesale attack upon this type of insurance coverage as being against public policy.
The policy issued by Gulf is known in the industry as a “claims made” or “discovery” policy. It is best understood in juxtaposition to what is known as an “occurrence” policy. These two different types of policies have been recognized in two Florida[4] cases but neither case involved an attack upon the validity of the various types of insurance coverage. In Ranger Insurance Company v. United States Fire Ins. Co., 350 So.2d 570 (Fla. 3d DCA 1977), the court described the policies as follows:
[A] discovery policy is one wherein the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurance company during the policy period no matter when the act or omission occurred; an occurrence policy is one wherein the coverage is effective if the negligent act or omission occurs during the policy period, regardless of the date of the discovery.— 350 So.2d at 572.
Thus, it appears that notice to the carrier during the policy period is of the essence in a “claims made” policy. Obviously, a policy structured in this fashion has a far more limited exposure than an “occurrence” policy. Under the former coverage, the exposure exists for the policy term only, while under the latter the carrier may be exposed for many years. A lawyer might draw a will during the current year and be sued many years later by an intended beneficiary who was damaged by the lawyer’s improper advice to the decedent, e.g., McAbee v. Edwards, 340 So.2d 1167 (Fla. 4th DCA 1976). The limited exposure results in lower premiums and, we are told, the greater availability of coverage in a field where available coverage is diminishing.
Accordingly, we recognize the peculiarities of the “claims made” policy and see no reason why such contracts should be against public policy. The contract in question in several places cautions the reader that it is a “claims made” policy, which terms are therein defined. Thus, we are not dealing with a “sleeper provision.” However, we are persuaded that one aspect of the policy requires judicial intervention in order to make the contract fair; that aspect has to do with the termination date as it affects claims made very late in the policy period. A time comes at the end of the policy period when it may well be impossible for the insured to notify the company of a claim. The extreme case would involve the receipt of a claim by the insured minutes before the midnight expiration of the term on the last day thereof. It would also appear that delivery of notice of a claim to a lawyer’s office on the day before expiration of the term, as in the present case, may under the circumstances make it virtually impossible to get notice to the insurer. Therefore, we hold that there should be some reasonable period of time after the end of the term to enable an insured to notify the insurer of a claim discovered very late in the policy period. This is not an unheard of suggestion. In Graman v. Continental Cas. Co., 87 Ill.App.3d 896, 40 Ill.Dec. 772, 409 N.E.2d 387 (1980), the “claims made” policy involved there provided that the insurance afforded by the policy covered negligence that occurred during the policy period, provided that claims were first made against the insured during the policy period and reported in writing to the Company during this policy period “or within 60 days after the expiration of this policy period.” In Breaux v. St. Paul Fire & Marine Insurance Co., 326 So.2d 891 (La.App.1976), the Louisiana court acknowledged that “claims made” policies require that the claim be discovered and reported during the policy period. The court then gratuitously added, “Some reasonable extension of reporting time for last minute claims might be allowed.” 326 So.2d at 892.
Predictably, appellee argues strenuously against such a concept and *1111 points to the provision of the Gulf policy denominated Extended Discovery Indorsement, which upon payment of an additional premium enables an insured to purchase the virtual equivalent of “occurrence” coverage for specific periods of time. For example, a lawyer retiring from practice with no further use of a “claims made” policy might want to protect himself from future claims arising out of negligent acts that occurred before he retired. This could be done by exercising his right under the Extended Discovery Indorsement and converting the “claims made” policy into an “occurrence” policy. But we do not see this available coverage as meeting the needs of an insured for late claims discovered at the very end of the insured term. Therefore, we believe that, if the policy has no express provision fixing a reasonable time after the policy period expires for reporting claims that are discovered late in the policy period, the policy should be held to allow the reporting of such claims within a reasonable time after discovery even though that time extend beyond the termination of the policy. What is a reasonable time under the circumstances of each case is a question of fact. Thus, the trier of facts must decide whether under all of the circumstances of this case appellant properly notified appel-lee of the claim in question so as to make coverage under the Gulf policy effective.
Accordingly, the summary judgment appealed from is reversed and the cause is remanded to the trial court for further proceedings.
REVERSED AND REMANDED with directions.
BERANEK and HURLEY, JJ., concur.

. The pertinent provisions of the policy are:
I. COVERAGE—
To pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of any claims first made against the Insured during the policy period, arising out of professional services rendered or which should have been rendered for others in the Insured’s capacity as a lawyer, subsequent to the effective date, and caused by the insured or any other person for whose acts the Insured is legally liable, except as excluded or limited by the terms, conditions and exclusions applicable to this Coverage Form.
******
III. Policy Period-Territory—
This Coverage Form and the insurance provided hereby only applies to professional services rendered or which should have been rendered within the United States of America, its territories or possessions or Canada subsequent to the effective date and then only if claim is first made during the policy period or an extended discovery period purchased in accordance with Condition 3.
The following provisions shall apply in determining whether a claim is first made during the policy period or an extended discovery period: (a) If during the policy period or an extended period (if purchased) the Insured shall have knowledge or become aware of any event arising out of the rendering or failure to render professional services covered hereby which may subsequently give rise to a claim and shall during the policy period or such extended discovery period give written notice thereof to the Company in accordance with Condition 4(1) of this Coverage Form, then such notice shall be considered a claim made hereunder within the policy period or such extended discovery period.
(b) If any claim is first made during the policy period or an extended discovery period (if purchased) alleging damages which are payable under this Coverage Form, any additional claims which are made or suits or proceedings in connection therewith which are brought subsequent to the policy period or such extended discovery period for damages resulting from the same or related professional services shall be considered a part of the claim which was first made during the policy period or such extended discovery period.
A claim shall be considered to be first made when the Company first receives notice of the claim or of an event which may subsequently give rise to a claim (See Condition 3 for Insured’s rights to have Extended Discovery Endorsements issued).

. The client even suggested the firm notify its malpractice carrier and advise the client of the carrier’s name.

. The cause remains pending in the trial court against L.P.L.I.C.

. Ranger Insurance Company v. United States Fire Ins. Co., 350 So.2d 570 (Fla. 3d DCA 1977); Bill Binko Chrysler-Plymouth, Inc. v. Compass Insurance Company, Inc., 385 So.2d 692 (Fla. 4th DCA 1980).