**PUBLISH**

**F I L E D**
**United States Court of Appeals**
**February 27, 1997**

**PATRICK FISHER**
**Clerk**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

CONTINENTAL CASUALTY
COMPANY,

      Plaintiff-Counter-Defendant,

  v.

CHARLES HEMPEL,

      Defendant - Appellant,

PATRICK L. WESTERFIELD,
Representative of the Estate of Frank O.
Westerfield, Jr., deceased,

      Defendant-Third-Party-Plaintiff
      Counter Defendant- Appellant,

  v.

HARTFORD ACCIDENT &
INDEMNITY COMPANY;
INSURANCE COMPANY OF NORTH
AMERICA; INTERSTATE FIRE &
CASUALTY COMPANY; and ST. PAUL
FIRE AND MARINE INSURANCE
COMPANY;

      Third-Party Defendants-
      Counter-Defendants - Counter
      Claimants - Third-Party
      Plaintiffs,

No. 95-2282

ROY AND VIRGINIA TAUCHE REVOCABLE LIVING TRUST; FRANCIS M. GRAHAM REVOCABLE TRUST; ROXANNE GRAHAM IRREVOCABLE TRUST; ROXANNE GRAHAM REVOCABLE TRUST; THOMAS TAUCHE IRREVOCABLE TRUST; WALTER TAUCHE IRREVOCABLE TRUST; THOMAS TAUCHE, only to the extent of any interest as a Beneficiary and/or as Trustee of one or more of named Trusts; FIRST SECURITY BANK, formerly known as First National Bank, as Trustee of one or more of the Trusts; ROY TAUCHE, only to the extent of any interest as a Beneficiary and/or as Trustee of one or more of the Trusts; VIRGINIA TAUCHE, only to the extent of any interest as a Beneficiary and/or as Trustee of one or more of the Trusts; ROXANNE GRAHAM, only to the extent of any interest as a Beneficiary and/or any interest as a Beneficiary and/or as Trustee of one or more of the Trusts; WALTER TAUCHE, only to the extent of any interest as a Beneficiary and/or as Trustee of one or more of the Trusts,

       Third-Party Defendants-
       Counter Defendants,

and

UNITED STATES FIRE INSURANCE COMPANY,

       Third-Party-Defendant -
       Counter Defendant-Counter
       Claimant-Third-Party Plaintiff

2

Appeal from the United States District Court for the
District of New Mexico
(D.C. No. CIV 94-412 JC (WWD)

Floyd Wilson of Wilson and Pryor, P.C., Albuquerque, New Mexico, for Patrick L. Westerfield, Appellant.

Richard D. Yeomans/Ramona Bootes of Guebert & Yeomans, P.C., Albuquerque, New Mexico, for Charles Hempel, Appellant.

William P. Gralow and M. Clea Gutterson of Civerolo, Wolf, Gralow & Hill for U. S. Fire Insurance Company, Appellee.

Before **BRORBY,** Circuit Judge, **LOGAN** and **RONEY**[*], Senior Circuit Judges.

**RONEY,** Senior Circuit Judge.

This case involves an *excess* legal malpractice insurance policy.  Excess policies are written to provide coverage over and above that provided by a primary policy. Malpractice policies are issued in three forms:  (1) "occurrence" policies cover acts of malpractice that occurred during the period of time for which the policy is written; (2) "claims made" policies cover only the malpractice claims made against the insured during the policy period, regardless of when the act of malpractice occurred; and (3) "claims and occurrence" policies provide coverage only when both the act of malpractice occurred

_____

[*]Honorable Paul H. Roney, Senior Circuit Judge, U. S. Court of Appeals for the Eleventh Circuit, sitting by designation.

within the policy period and the claim for that act of malpractice is made within the policy period.        In this case, the occurrence, that is, the act of malpractice, was within the period for which the excess policy was written, but the claim was made after that period expired.  The primary policy

was a claim and occurrence policy.  The party seeking to be paid here under the *excess* policy in this case asserts that unlike the primary policy, the excess policy was an occurrence only policy and did not require a claim to be made within the policy period.  Holding that the language in the excess policy made clear that the policy mirrored the type of coverage in the primary policy and was unambiguous so that no jury trial was required, the district court entered summary judgment for the insurance company.  We affirm.

A brief review of the facts sets up the issue for decision in this case. The insured attorney, Frank O. Westerfield, Jr., sought payment under United States Fire Insurance Company's excess policy after a $26.38 million stipulated judgment for malpractice was entered against him in 1992.[1]  His primary professional liability insurance was issued by St. Paul Fire & Marine Insurance Company.  Both policies covered the same period from October 18, 1979 to October 18, 1980.  There is no question that because the primary policy required not only the act of malpractice but also

_____

[1]  When Westerfield died in October 1994, his estate became a party to this litigation.

the reporting of a claim to occur within the policy period, the insured was not entitled to coverage under St. Paul's primary policy.

United States Fire maintained that its excess policy followed the type of coverage offered by the primary policy and was therefore a claims and occurrence policy also. It denied the claim made in 1992 that was outside of the policy period on the ground that it was not covered by the excess policy.

The insured, on the other hand, contended that certain language within the two policies was inconsistent, thus creating an ambiguity that must be resolved in favor of the insured. *See Federal Ins. Co. v. Century Fed. Sav. & Loan*, 824 P.2d 302, 307 (N.M. 1992) (when language in an insurance contract is inconsistent or conflicting, it must be construed against the insurer).

The insured points to Section 19 of the excess policy, which states in relevant part:

> 19. This Certificate applies only to accidents or occurrences happening between the effective and expiration dates [contained in the applicable underlying policy in this case October 18, 1979 to October 18, 1980]....

The insured argues that because this section does not address whether a claim also has to be made within the applicable period, the language can reasonably be interpreted as meaning that the policy provided coverage on an "occurrence" basis, creating an inconsistency within the policy itself and between the two policies. The insured cites *Ranger Ins. Co. v. United States Fire Ins. Co.*, 350 So.2d 570 (Fla. 3d DCA 1977), in which United States Fire argued and the court held that a policy containing a materially

5

identical provision was an "occurrence" policy. We find this case inapposite because it involved primary coverage, not excess coverage, and contained no restriction on when the claim had to be discovered or reported.

The insured would look at paragraph 19 in isolation, but the policy must be considered in its entirety. *Western Heritage Ins. Co. v. Chava Trucking, Inc.*, 991 F.2d 651 (10th Cir. 1993). Read as a whole, the excess policy is consistent with the requirement in the primary policy that both the performance of professional service dates (the covered event) and the claim must occur during the effective dates of the policy.

The first two paragraphs of the excess policy unequivocally state that United States Fire offers the same coverage and conditions as the primary policy:

> 1. The Company hereby indemnifies the Insured against ultimate net loss in excess of and arising out of the hazards covered and as defined and in excess of the underlying insurance as shown in Item 4 of the ...[underlying insurance]....
>
> 2. Except as may be inconsistent with this Certificate, the coverage provided by this Certificate shall follow the insuring agreements, conditions and exclusions of the underlying insurance (whether primary or excess) immediately preceding the layer of coverage provided by this Certificate....

Read in conjunction with these two paragraphs, the apparent purpose of Paragraph 19 is to specify the *dates* within which the covered events must occur under the excess policy, *i.e.*, to specify the time period that the excess policy covers. This clause is necessary to avoid confusion that might result if the excess policy period straddles more than one primary policy, each with different coverage dates. It was obviously not the

6

purpose of Paragraph 19 to change the conditions of coverage set forth in paragraphs 1 and 2 above.

Because the excess policy is both internally consistent and consistent with the primary policy, we need not reach any other issues raised on this appeal. The district court decision is AFFIRMED.